CALVARY MORRIS, SHERIFF, ETC. v. JOHN MARCY AND OTHERS.

Bond taken by the sheriff for defendant's appearance on attachment is valid.

THIS was an action of debt, adjourned here for decision, from the county of Athens. The declaration was upon the obligatory part of the bond, in the usual form. The defendant, Marcy, craved *oyer*, and set out the condition in these words:

* " The condition of this obligation is such, that if the above- [84 bound John Marcy shall and does appear before the judges of the Supreme Court, to be holden at Athens, in and for the county of' Athens, on the first day of the next term, and answer unto what shall then and there be objected to him, by the State of Ohio, and not depart the court without leave, then," etc.

Upon the oyer, the defendant Marcy, pleaded:

1. *Non est factum.*

2. That the bond was executed by Marcy, as principal, and his co-defendants as his sureties, to the plaintiff Morris, as sheriff, and

Morris, Sheriff, etc. *v.* Marcy et al.

that at the time when the bond was so executed and delivered, the sheriff had not served, and was not serving any writ of *capias* against said Marcy, upon any indictment found, etc.

To this plea the plaintiff replied, that the Supreme Court, sitting in Athens county, awarded a writ of attachment against Marcy, for contempt, returnable to the next succeeding term, which writ was duly issued, and put into the hands of the sheriff, command ing him to take the body of said Marcy, etc., upon which writ he arrested Marcy, and at his special request took the bond, etc.

The defendant demurred.

H. STANBERY, in support of the demurrer, maintained:

That the statute law of Ohio, the act providing for the service and return of process, Vol. xxii. 193, did not extend to the case of an arrest upon attachment, and could not be sustained as a statutory bond. As a common law bond, he contended it was void, as taken for ease and favor. He distinguished it from cases where bonds were taken, under a proper authority, but not in strict conformity with the directions of that authority. He also insisted, that bonds of this description were against public policy. He cited, 1 Stra. 479; Com. Rep. 264; 1 H. Bl. 468; 5 Mass. 541; 4 Term, 505; 2 H. Bl. 418; 2 Ohio, 284.

J. OLDS, for the plaintiff, and in support of the bond, contended: That statutory authority to take the bond was not essential to its validity. 7 Mass. 200; 8 Mass. 373; 12 Mass. 367; 2 Dall. 122; 85] 1 Saund. 200. He argued that the *English cases cited were founded upon the Stat. 23 Hen. VI., which contained a clause prohibiting the officer from taking a bond, *colere officie*, where express authority was not given.

By the COURT:

The court are called to decide, upon the pleadings, whether, on attachment for contempt, the sheriff can take bail or not. The defendants do not rely upon performance of the condition, nor upon any excuse for non-performance; but, upon the fact that the sheriff took this bond, and discharged the prisoner, "without having any *capias* upon indictment found." The fourth section of the act to which this plea refers, authorizes an arrest in any county in the state, and directs the person to be committed, or held to bail,

Morris, Sheriff, etc. *v.* Marcy et al.

as shall be provided for by law, etc. By the act "defining the duties of sheriffs and coroners in certain cases," the sheriff must preserve the public peace, and cause all persons guilty of a breach thereof, within his knowledge or view, to enter into a recognizance with sureties, for keeping the peace, and appearing at the succeeding term of the common pleas, etc. The authority to take bail upon an attachment for contempt, is not expressly given to the sheriff by either of these acts. The necessity of issuing a *capias* for contempt, appears not to have been in the contemplation of the legislature, when they were under consideration. To enable the plaintiff to recover upon this bond, the power of the sheriff to take bail, must either be found in the usages of the common law, or be justly inferred from the provisions of our statutes.

At common law, bail was allowed for all offenses except murder. 2 Inst. 190. The accused might be bailed until convicted of the offense. 2 Inst. 186 ; Rex *v.* Daws, 2 Salk. 608. Daws was taken by attachment for contempt, and the sheriff took a bail bond for his appearance. The court agreed that a bail bond might be taken by the sheriff on attachment. A resolution of the judges appears afterward contrary to this. 1 Strange, 479. Both of these decisions grew out of the statute, 23 Hen. VI., c. 10, and the reasons are not given in either case. At common law, the sheriff was not compelled to take bail for the appearance of his prisoner, *but might of his own accord. 1 Vent. 55. By 1 Statute [86 of Westminster, the sheriff is forbidden to take anything for the escape of a thief or felon, unless it be first judged an escape by the justices in Eyre. 2 Inst. 164. North, C. J., in delivering the opinion of the court, in Ellis *v.* Yarborough, sheriff, etc., 2 Mod. 181, says, "the common law was very rigorous as to the execution of process ; the *capias* was *ita quod capias*, the body at the day of the return, and if the sheriff had arrested one, it had been an escape to let him go. Before this statute, 23 Hen. VI., c. 10, the sheriff usually took securities for the appearance of the prisoner, and by this means used great extortion, etc., to prevent which mischiefs, this statute was made and so designed." It seems, therefore, quite clear that, before this statute, the sheriff might take bail in criminal cases, although not compelled to do so. If the prisoner failed to appear, it was an escape ; but the undertaking of the sureties was not void, and it would seem not void,

Morris, Sheriff, etc. *v.* Marcy et al.

although taken for ease and favor, before the statute, 23 Hen. VI. So here, the sheriff might be liable, in the first instance, for the escape; but it would not follow that the bond taken for appearance would be void. We, therefore, conclude that the taking of the bond was warranted by the principles of the common law, and can not be avoided by the obligors, unless the statute law restrained the powers of the sheriff. But if this exercise of authority was not warranted by common law, it would be worthy of inquiry whether it is not fairly inferable from our statutory regulations. It will not be seriously controverted, that a power to let to bail in criminal cases is one which can not safely be intrusted to those officers. The legislature has granted it to them upon indictments found and breaches of the peace. If it is proper to be exercised after the guilt of the accused has been found by a grand jury, no sound reason could be discerned why it should not be before. The presumption of guilt is certainly stronger *after* than it is *before* indictment found. The statutes enlarge, but do not restrain the powers of the sheriff to take bail. We are forced to the conclusion, that the legislature intended to include the exercise of the less responsible power in the grant of the greater. This view of the powers of the sheriff is fortified by an examination of section 19 of the act, "pointing out the mode of trying criminals." *If we give this act the strict construction insisted upon by the defendants, for the one to which their pleadings refer, a person imprisoned on attachment for contempt, however small the offense, or weak the presumption of guilt, would, in many instances, owing to casualties not unfrequent in this court, be compelled to suffer a most wasting imprisonment without bail or mainprise. The act last referred to, if taken literally, and without latitude of construction, would only authorize a judge to admit to bail when the prisoner is confined by *warrant*, or *capias upon indictment*. This would be placing one who had merely disobeyed the orders or rules of court, in the situation of him who was under a charge of a capital crime. The statute should be very explicit to do this. While the rules of construction will admit of a different interpretation, the court should not put this harsh one upon them. The right to exercise this power by the sheriff is less doubtful than by a judge under the act above referred to. If neither have the power, the legislature must have widely departed from the general character of our criminal juris-

prudence, which is to extend to the accused every indulgence consistent with the public good. We think they have not so departed.

The defendant's principal has received the full benefit of the condition of the bond, which is neither opposed to sound public policy, the usage of the common law, nor the provisions of any statute of the state; but, on the contrary, the right to take it is fairly implied in the powers given to the sheriff, in cases requiring more prudence and discretion, and seems to accord with the mild character of our criminal jurisprudence. The demurrer to the replication is therefore overruled.

Judgment for the plaintiff. Judge SWAN was ill, and did not sit. Judge HITCHCOCK dissented.